UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

SHANE DANIEL JONES,

    Debtor.

Case No. 26-01094-swd
Hon. Scott W. Dales
Chapter 12

_____/

<u>MEMORANDUM OF DECISION AND ORDER</u>

PRESENT:  HONORABLE SCOTT W. DALES
      Chief United States Bankruptcy Judge

Andrea Michelle Jones, a creditor and the estranged wife of chapter 12 debtor Shane Daniel Jones (the "Debtor"), filed her Third Party's Motion to Dismiss Case With Request for Bar to Refiling (ECF No. 9, the "Motion"), premised largely on the Debtor's supposed bad faith in filing the current chapter 12 petition and inability to conduct farming operations because of his recent incarceration. The United States Trustee concurred in the Motion.

The court conducted an evidentiary hearing in Grand Rapids, Michigan, on July 21, 2026, at which Ms. Jones appeared *pro se*, and the United States Trustee and the Debtor appeared through their respective counsel. The chapter 12 trustee, with the court's permission, did not participate. *See* 11 U.S.C. § 1202(b)(3) (specifying types of proceedings at which the trustee shall "appear and be heard" but omitting dismissal hearings).

At the hearing, the court took testimony from the Debtor and admitted eleven exhibits, largely without objection, including images of the Debtor's fields, a text string between the Debtor and a former girlfriend, a dunning notice from a seed supplier, an unsigned order from the Barry County Family Court presiding over the parties' divorce proceedings, and documents showing

Ms. Jones's ownership interest in, and obligation to pay for, a 2011 John Deere tractor and a Kabelco excavator.

In the Motion, Ms. Jones argues that her husband filed his voluntary petition in bad faith by listing properties, vehicles, and farm equipment that is jointly owned by the parties or individually owned by her, and that, contrary to his schedules, he does not currently have employment and is unable to make payments into any chapter 12 plan due to his incarceration. The Motion also recites that Mr. Jones is delinquent on the post-petition domestic support obligation ("DSO") to the mother of one of his children, but Ms. Jones offered no testimony or other evidence regarding any DSO delinquencies.[1]

In response, Mr. Jones states that he did not file his case in bad faith and is entitled to use and maintain the farm. For the following reasons, and without predicting the Debtor's future success in confirming a plan, the court will deny the Motion.

First, Ms. Jones's concerns about the Debtor's incarceration interfering with farming operations do not support dismissal. From Mr. Jones's participation at the hearing, and from the absence of evidence to the contrary, the court infers that his incarceration has ended, and he is free to resume farming. His testimony did suggest that complications involving a home confinement device—an ankle monitor—prevented him from planting certain fields further away from his home in time to qualify for crop insurance. He explained, however, that he will plant the fields with a fall crop (and obtain crop insurance) at the appropriate time, later this year. Many debtors experience delays and setbacks in maximizing their income. Although most delays are not attributable to formal restrictions on liberty resulting from a criminal conviction, the Debtor's

---

[1] The court regards the DSO-related aspect of the Motion as abandoned, albeit without prejudice, given the continuing nature of the obligation to remain current on DSO payments after the petition date.

response to the several-month delay in planting strikes the court as prudent and not a harbinger of failure in meeting the requirements of his five-year plan (ECF No. 30).

Next, the photographic depictions of "weed-covered" fields are similarly unpersuasive. The Debtor explained that, given the loss of some farm equipment due to repossession, he had to employ an admittedly less favorable "non-till" farming technique for planting corn. He credibly testified that he in fact planted Pioneer seed corn, purchased on credit, in the field that, to the court's untutored eye, seemed to lay fallow. The Debtor also pointed to tracks in Exh. AJ-1 that appeared to corroborate his testimony regarding his implementation of "non-till" farming this year.

The text exchange with the former girlfriend that Ms. Jones evidently harvested from Facebook, where the Debtor stated that he is "barely" farming, is not case-ending. With the Debtor's explanation of the context of that exchange, the court regards the solitary electronic colloquy as too isolated and flippant to doom his case. The comment amounts to little more than "drama" or hyperbole reflecting the Debtor's despair and frustration at the time. His more recent testimony under oath persuaded the court that he earnestly intends to farm the land that has been in his family for five generations, and that he is doing just that. Mr. Jones candidly conceded that he is no longer cultivating the roughly 30 acres of land the court authorized the Barry County Family Court to address (and that Ms. Jones sold with the blessing of that court), or the two parcels that his in-home detention prevented him from timely planting under the umbrella of crop insurance. Nevertheless, he credibly stated that in 2026 he is farming "close to" the same acreage as 2025, albeit using different (and less preferred) agricultural methods. Ms. Jones gave the court no evidence to contradict her husband's estimate of cultivated acreage.

Again, the court is not predicting success at confirmation, merely evaluating the Debtor's good faith in seeking relief under chapter 12. More generally, the court prefers (and fairness

demands) that we ordinarily address confirmation issues in connection with the confirmation of the Debtor's timely-filed plan, presently scheduled for August 12, 2026.

Moreover, with respect to the exhibits showing Ms. Jones's ownership of the 2011 John Deere tractor and the Kabelco excavator, the Debtor testified that he is using the tractor but not the excavator, and that the spouses made payments on the equipment using proceeds of farming operations that, until their recent estrangement, they jointly and cooperatively conducted. The difficulty in disentangling assets under the circumstances, whether a question for this court or the family court (assuming relief from the automatic stay), likely explains the Debtor's scheduling assets formally titled in Ms. Jones's name in this case. Similarly, Exh. AI, the Sygenta invoice for 2024 seed corn (addressed to the Debtor but reportedly Ms. Jones's sole or joint obligation) illustrates the joint nature of their former farming operation. The court would have expected the Debtor to schedule an invoice with his name on it, but inadvertent omissions are not uncommon and a single instance, without more, counsels in favor of amending schedules rather than dismissing petitions.[2] Stated differently, the court does not infer bad faith on account of the Debtor's treatment of the tractor and excavator, or the seed corn invoice.

At the same time, and as the Debtor's empathetic counsel recognized, this case and the employment of property which Ms. Jones claims an interest in presents understandable hardships for her. The Bankruptcy Code, however, addresses these hardships not just with the scythe of dismissal, but also using smaller pruners, such as (after notice and hearing) orders granting adequate protection, relief from the automatic stay, or otherwise prohibiting or conditioning use of property in which Ms. Jones claims an interest.

---

[2] During the hearing the parties agreed that the court could take judicial notice of the Debtor's schedules.

As for the sales of livestock (six cows) last week and the sale of the baler on or about March 9, 2026, although the cattle sales may have occurred outside the ordinary course of business, neither Ms. Jones nor the United States Trustee established that they did.  *See* 11 U.S.C. § 1203 (rights and power of debtor in possession generally same as trustee) and § 363(c)(1) (authorizing transactions in the ordinary course of business).  As for the sale of the baler, the Debtor testified that it occurred before the bankruptcy filing, so it does not evince bankruptcy-related abuse.

Certainly, the unsigned family court order (Exh. AE-2) suggests that these sales may have violated the family court's restraining order, but that court may enforce its own orders with its contempt power or other measures; this court, though certainly deferential to the sister court, need not dismiss the chapter 12 case to protect another court or Ms. Jones.

As the United States Trustee requested at the end of the hearing, however, the court admonishes the Debtor to observe the requirements that federal law imposes on him as a debtor in possession, including the requirements of applicable non-bankruptcy law as incorporated herein. *See* 11 U.S.C. § 1203; *see also* 28 U.S.C. § 959(b).

Having carefully considered the Debtor's testimony, which the court credits, and the exhibits admitted during the hearing, the court finds that Ms. Jones has not met her burden of proof by a preponderance of the evidence.

The court has considered the other arguments for dismissal, including from the United States Trustee, and finds them without merit.  Accordingly, the court will deny the Motion.


NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (ECF No. 9) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Andrea Michelle Jones (by U.S. Mail), the Debtor, Agustin Henriquez, Jr., Esq., Darrell R. Dettman, Esq., Perry Pastula, Esq., the United States Trustee, and all parties requesting notice of the proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated July 23, 2026**



Scott W. Dales
United States Bankruptcy Judge